## Pyles, Executrix, v. Bosler, Executrix.

*T. E. Vale* and *H. T. Ames*, for plaintiff; *J. P. McKeehan*, for defendant.

BIDDLE, P. J., Dec. 31, 1927.—The question raised by the record in this case is not one of legal liability, but rather one as to the remedy through which such a liability is to be enforced. The plaintiff is the owner of a number of bonds, the payment of which is alleged to have been guaranteed by Frank C. Bosler, the defendant's testator, during his lifetime, which bonds did not, according to their terms, mature until March 1, 1927. Frank C. Bosler, the decedent, died on Nov. 25, 1918, testate, and letters testamentary on his estate were issued to his widow, Hannah Elizabeth Bosler, to whom the bulk of his real estate was devised. On Nov. 10, 1919, the plaintiff filed in the office of the prothonotary of this county, to No. 109, December Term, 1919, her claim based on the alleged guaranty of the decedent of the bonds referred to, and had her claim indexed in accordance with the provisions of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of June 7, 1919, P. L. 412. On Oct. 22, 1923, the entry of her claim was renewed in said office in accordance with the provisions of the act of assembly referred to, said renewal being given the number and term No. 143, December Term, 1923. On July 21, 1927, the plaintiff caused a writ of *scire facias* based on the entries to No. 109, December Term, 1919, and No. 143, December Term, 1923, to be issued to determine the liability of the said decedent on the alleged guaranty; to continue the lien of the said claim as it was alleged to have been preserved by the entries on Nov. 10, 1919, and Oct. 22, 1923, and to. show cause why the said liened premises with the appurtenances ought not to be taken in execution and sold to satisfy the debt and interest. No other basis for the writ of *scire facias*, except the two entries above referred to, was averred or appears. On Aug. 9, 1927, the defendant presented her petition, averring said facts, and that no action has ever been commenced to establish liability against her on said claim other than said writ of *scire facias;* averring that that form of action was irregular and improper, and that there was no authority for the issuance of a writ of *scire facias* against

her before there had been a judgment determining the liability of the decedent's estate and the amount thereof; and on said date the court granted a rule upon the plaintiff to show cause why the said writ of *scire facias* should not be quashed. To this rule an answer was filed, which, while not denying any of the averments of fact of the defendant's petition, averred that the proceeding by writ of *scire facias* was legal and proper, and that the rule to show cause should be discharged. The matter comes before us for determination in this form.

One of the grounds urged on behalf of the defendant, as we understood it, is that Hannah Elizabeth Bosler, as devisee and owner of the land against which it is sought to sustain a lien, could not be joined in the original proceeding with the personal representative of the decedent. Prior to the passage of the Act of 1917, above referred to, this contention was unquestionably correct: Wetmore *v.* Dobbins, 2 Sup. Ct. 110.

But the express language of that act, as amended, provides that: "The plaintiff may, at his election, join such surviving spouse and heirs, and the devisee, alienee, or owner of the land, in such original action." No reason has been advanced to justify the court in holding this provision invalid, and as it affects merely the remedy, we see no reason why it is invalid or why the plaintiff in the present case might not avail herself thereof; and this ground of objection cannot, therefore, be sustained.

The substantial objection in support of the rule to quash is that there is no authority for using a writ of *scire facias* as the original action to determine the liability of the estate of a decedent growing out of a contract entered into by the decedent during his lifetime. The determination of that question involves the consideration of paragraphs *(a)* and *(b)* of section 15 of the Act of June 7, 1917, P. L. 447, as amended by the Act of June 7, 1919, P. L. 412, those two paragraphs providing as follows:

"*(a)* No debts of a decedent . . . shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent . . . and be duly prosecuted to judgment."

"*(b)* No bond, covenant, debt, or demand, which is not payable within the said period of one year after the decease of the debtor, shall remain a lien upon the real estate of such decedent longer than one year after his death, unless, within said period after his decease, a copy or particular written statement thereof be filed in the office of the prothonotary of the county where the real estate to be charged is situate, and be indexed against the decedent and the executor or administrator in the judgment index in the county where the executor or administrator resides, and also in the county in which the real estate sought to be charged is situate; and then to be a lien only for the period of one year after the said bond, covenant, debt or demand becomes due, unless, within said period of one year, an action for the recovery thereof be brought, indexed and duly prosecuted to judgment, as provided in clause *(a)* of this section: Provided, that when such bond, covenant, debt or demand does not become due within five years from the date of the death of such decedent, a renewal of the entry of such action upon the judgment index as aforesaid shall, upon the order of the plaintiff or his attorney, duly filed in said prothonotary's office, be noted on said index within every recurring period of five years, otherwise the same shall cease to be a lien."

The contention of the plaintiff in this case is that the debt of the decedent did not become due until March 1, 1927, more than eight years after his

death, and that, of course, no action for its recovery could be instituted prior thereto, except the filing of a copy or particular written statement of her claim with its renewal, a procedure that was followed in the present case; and the plaintiff further contends that the filing and renewal of this statement constituted such an action as will sustain a writ of scire facias, and that this proceeding was, therefore, regular and valid. The plaintiff further contends that a motion to quash the writ cannot be availed of unless some irregularity in the proceeding appears on the face of the record. In the present case, however, if the contention of the defendant is correct, namely, that the proceeding to No. 263, September Term, 1927, is the original proceeding to determine the liability of the decedent and that scire facias is of itself an improper form of action for such purpose, then the record itself does disclose such irregularity as is sufficient to justify and sustain a motion to quash. So that, as we view it, the sole question for determination is the latter one, namely, is a writ of scire facias the proper proceeding under the conditions outlined above?

After a careful consideration of the able and exhaustive argument of the learned counsel for the plaintiff, together with the brief submitted by them, we are unable to agree with their contention. They have shown no statutory authority and no judicial recognition or power outside of a statute to bring an action in this form to determine original liability of a decedent. Indeed, no case has been cited or called to our attention where anything of the sort was even attempted; and, while this fact is not necessarily conclusive, it is very persuasive of the contention of the defendant that the plaintiff has adopted an erroneous form of procedure. The plaintiff contends that what has been done here is closely analogous to the proceeding for a recovery under a municipal or mechanic's lien; and this, we think, must be admitted. But there is a material difference in regard to them. In both of those cases, the plaintiffs are able to point to statutes not merely permitting but directing such procedure; a condition that, as we view it, is lacking in the present case, unless it can be drawn from the language of the act of assembly quoted above. Our construction of that act is that, instead of authorizing the procedure adopted by the plaintiff here, it practically directs another form of procedure. Had Frank C. Bosler lived until after March 1, 1927, and had the present plaintiff proceeded to enforce the liability which she insists exists under his guaranty of the payment of the bonds in question, it can scarcely be contended that she would have adopted any form of action other than an action of assumpsit. Had the bonds in question matured on March 1, 1918, it would have been necessary, under the express provisions of the Fiduciaries Act, for her to have brought an action against his executrix within a year of his death. And, again, it will scarcely be contended that any other form of action than one of assumpsit would have been instituted. At least, it was not so argued before us, or in the brief submitted; and we have not been referred to any instance in which anything but an action of assumpsit would have been brought. This would constitute the "original action" in which the owner of the land liened might be joined. If that was the proper form of action in case the debt had been demandable at the death of the decedent, no convincing reason has been advanced for adopting a different procedure in an action to be brought where, in order to preserve the lien against the decedent's real estate, it has become necessary to file a copy of the bond, contract or particular statement of his claim, as was done in this case. And, again, we are unable to see that any different form of procedure is called for where, as here, it is alleged that the demand against the decedent did not

become due within five years from the date of his death. The only difference in these various cases is the *time* at which the "original action" may be commenced. There is nothing to indicate that the different times require different *forms* of such "original action." The filing of the statement by the plaintiff within one year of the death of Frank C. Bosler, and its renewal in 1923, did not, as we understand it, constitute such an action as is mentioned in the act in question, but merely constituted a notice to all the parties in interest of the possibility of bringing such an action after the demand became due: Com. *v.* Cooper, 192 Pa. 424.

It is pointed out by the learned counsel for the plaintiff that, in the amendment of 1919, the filing of the statement is spoken of as "the entry of such action," but the mere fact that the legislature used that word would not make the filing in question an action within the technical legal meaning of the term; and this is recognized in the act itself, because, in speaking of the procedure against the personal representatives and devisees, the proceeding is spoken of as one that shall "be duly prosecuted to judgment;" and it is not pretended that the statement filed in 1919 and in 1923 could itself, by any known procedure, be prosecuted to judgment. In substance, if not in form, we cannot help feeling that the learned counsel for the plaintiff felt about this very much as the court does; for an examination of the pleadings filed by them in the present case shows that in their *præcipe* for the writ of *scire facias,* and in the writ itself, they approached much nearer to the procedure in an action of *assumpsit* in most respects than they did to the procedure in an ordinary writ of *scire facias* to "revive and continue the lien of a judgment *et quare executionem non.*" About the only changes that would be required in the *præcipe* for the present writ in order to make it answer as a plaintiff's statement of claim in an action of *assumpsit* on the alleged guaranty would be to so divide its various paragraphs that no one would contain more than a single averment and to number the paragraphs when so divided. It was not contended on behalf of the plaintiffs that the action of *assumpsit* would not lie to enforce the plaintiff's claim against the decedent's personal representative; but it was contended, under the authority of Com. *v.* Cooper, *supra,* that to bring such an action would be to lose the lien against the real estate devised to Hannah Elizabeth Bosler individually. We cannot see that this loss of lien would follow, nor do we so construe the decision in Com. *v.* Cooper. The conditions there are so radically and essentially different from the ones set out in the present case that we feel that the conclusion reached in that case would not apply as the learned counsel for the plaintiff feared that it would apply here. We think that the provisions in the Act of 1917, as amended in 1919, permitting the joinder of the owner of the land in the original proceeding, would wholly obviate the risk feared by the learned counsel for the plaintiff; and we feel that their procedure in this case should have been by an action of *assumpsit,* with a reference to their proceedings to continue the lien of their claim against the real estate of the decedent, very much in the manner followed in their *præcipe* for the present writ. As the case stands, therefore, we are of opinion that the defendant is entitled to have her rule made absolute. It was suggested at the argument, however, that if the court was of the opinion that the present proceeding was irregular, the plaintiff might apply for an amendment in the form of the pending action by changing the action from a writ of *scire facias* to an action of *assumpsit.* An amendment of this kind, under the provisions of the Act of May 10, 1871, P. L. 265, was allowed in the case of Com. *v.* Weiss, 6 Luzerne Legal Reg. 3, where an action of *scire facias sur*

recognizance in the Orphans' Court was changed to an action of debt on a bond. We can see no distinction in principle between that case and the present one; and, if such an amendment was asked for, we should feel disposed to allow it, as such allowance would not change the cause of action and would not, as we view it, prejudice the rights of either party; and our order in the case will be made accordingly.

And now, Dec. 31, 1927, it is ordered that if, within ten days from the filing of this opinion, the plaintiff shall present her petition for permission to change her form of action, then, if such amendment shall in due course be allowed, the present rule shall be dismissed; otherwise, it will be made absolute and the writ of *scire facias* quashed and set aside.

From Francis B. Sellers, Carlisle, Pa.